UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Miranda Tyler, | ) | Civil Action No.: 4:18-cv-1484-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Miranda Tyler seeks judicial review, pursuant to Section 205(g) and 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental social security income ("SSI") under the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF #17]. Plaintiff raises several objections to the Magistrate Judge's recommendation. [ECF #19]. Defendant responded to those objections. [ECF #22].

**Factual Findings and Procedural History**

In a decision dated June 18, 2010, Plaintiff was awarded disability benefits as of June 1, 2008, as a result of congestive heart failure, cardiomyopathy, breast cancer with mastectomy, and diabetes. After a period of continuing review, benefits ceased effective November 2014 upon a determination that Plaintiff's health had improved and she was now able to work. Plaintiff requested a review of the decision to cease benefits. Plaintiff alleges she continues to be disabled due to congestive heart failure,

nonischemic cardiomyopathy, breast cancer with mastectomy, high blood pressure, diabetes, dislocated disc with back pain, anxiety and anemia.

According to her medical records, Plaintiff was hospitalized in 2008 with complaints of dyspnea. Testing at that time showed severe dilated cardiomyopathy with an ejection fraction of 37%.[1] She was also diagnosed with carcinoma of the right breast in 2001. She was again diagnosed with cancer in the right breast in 2009 and eventually underwent a bilateral mastectomy. [Tr. at 88, Ex. B5B]. Two ejection fractions noted in Plaintiff's January 2013 and February 2014 medical records indicate a result of 25%, which is considered abnormal. While under the care of Dr. George E. Castro, Plaintiff's records show that on March 5, 2013, she had an ejection fraction between 35% and 40% with a mildly dilated left atrium. In September of that year, her records indicate shortness of breath with moderate exertion. Later that October, Plaintiff's ejection fraction was 20 to 25% and her records indicate a severe mitral regurgitation. [Tr. 394-412, Ex. B9F]. Plaintiff continued treatment for diabetes, hypertensive heart disease with heart failure and nonischemic cardiomyopathy, and Dr. Castro recommended continued medical management. On September 24, 2014, a physician's assistant in Dr. Castro's office, Christopher C. Smith, provided a letter stating that Plaintiff had a long-standing history of nonsichemic/dilated cardiomyopathy with an ejection fraction of 35%, as well as issues with shortness of breath, lower extremity edema, orthopenea, and chronic systolic heart failure. Mr. Smith opined that Plaintiff was unable to maintain gainful employment and should be considered 100% disabled based on her cardiac condition. [Tr. 445; Ex. B15F]. On November 11, 2014, Tyler had another

---

[1] According to the American Heart Association, ejection fraction is a measurement, expressed as a percentage, of how much blood the left ventricle pumps out with each contraction. A normal heart's ejection fraction may be between 50 and 70 perfect. An ejection fraction measurement under 40 percent may be evidence of heart failure or cardiomyopathy. *See* https://www.heart.org/en/health-topics/heart-failure/diagnosing-heart-failure/ejection-fraction-heart-failure-measurement

echocardiogram which showed an ejection fraction of 63%, which is considered normal. [Tr. 475-76; Ex. B17F]. The following February, Plaintiff's records indicate she was experiencing shortness of breath with moderate exertion. Approximately a year later, in November of 2015, Plaintiff's estimated ejection fraction was at 48%. In September 2016, a different physician's assistant who treated Plaintiff, Tjuana Durden Seidl, opined that Plaintiff continued to be completely disabled due to her current medical condition and should not be allowed to perform strenuous physical activity until further notice. [Tr. 603-616; Ex. B26F]. Within Plaintiff's medical records, notes indicate that there were periods of time where she denies other related symptoms, such as shortness of breath or edema.

Plaintiff also continually sought treatment for diabetes, hypertension, back pain, and headaches. She was treated in 2013 for breast cancer. One record from her oncology doctor indicated an ejection fraction of 25% in October of 2013. [Tr. 311-312; Ex. B1F]. Dr. Mahmoud Abu-Ata saw Plaintiff in November 16, 2016 to evaluate her for carpal tunnel syndrome. He diagnosed her with anxiety, arthritis, osteoarthritis of both knees, chronic back pain, lumbar radiculopathy, musculoskeletal pain, numbness of the lower limb, coronary arteriosclerosis, obesity, hyperlipidemia, hypertension and carpal tunnel syndrome. He opined functional limitations including minimizing frequent repetitive hand movements, as well as avoiding heavy lifting, frequent bending, pulling, pushing or kneeling. [Tr. 623-25; Ex. B27F]. Plaintiff testified at her hearing that her breast cancer is in remission and has not returned. Plaintiff's doctor, Dr. John H. Hayden, also identified Plaintiff's breast cancer as resolved. [Tr. 308; Ex. B1F].

On November 24, 2014, Plaintiff requested a reconsideration of the decision to cease benefits. After receiving an unfavorable decision, Plaintiff requested a hearing by an ALJ. In the decision determining Plaintiff was not disabled, the ALJ's findings were as follows:

3

(1) The most recent favorable medical decision finding that the claimant is disabled is the decision dated June 18, 2010. This is known as the "comparison point decision" or CPD.

(2) At the time of the CPD, the claimant had the following medically determinable impairments: history of left breast mastectomy secondary to breast cancer, history of chronic heart failure secondary to cardiomyopathy, and diabetes mellitus. These impairments were found to result in the residual functional capacity to be unable to perform work related activities at any exertional level on a regular and continuing basis.

(3) Through the date of the decision, the claimant has not engaged in substantial gainful activity. (20 CFR 404.1594(f)(1)).

(4) The medical evidence establishes that, since November 12, 2014, the claimant has had the following medically determinable impairments: history of left breast mastectomy secondary to breast cancer, history of chronic heart failure secondary to cardiomyopathy, mild degenerative disc disease of the lumbar spine, diabetes mellitus, sick cell trait, anemia, anxiety, hypertension, obesity, hyperlipidemia, and right carpal tunnel syndrome. These are the claimant's current impairments. (20 CFR 404.1520(d), 404.1525, and 404.1526).

(5) Since November 12, 2014, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 AND 416.926).

(6) Medical improvement occurred on November 12, 2014 (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

(7) Since November 12, 2014, the impairments present at the time of the CPD decreased in medical severity to the point where the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme heat, cold, and humidity.

(8) The claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii) and

416.994(b)(2)(iv)(B)).

(9) Since November 12, 2014, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6) and 416.994(b)(5)(v)).

(10) Since November 12, 2014, based on the current impairments, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds. She can occasionally balance and stoop, but never kneel, crouch, or crawl. She must avoid concentrated exposure to extreme heat, cold, and humidity.

(11) The claimant has no past relevant work (20 CFR 404.1565 and 416.965)

(12) On November 12, 2014, the claimant was a younger individual age 18-49. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

(13) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(14) Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

(15) Since November 12, 2014, considering the claimant's age, education, work experience, and residual functional capacity based on the current impairments, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

(16) The claimant's disability ended on November 12, 2014, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8) and 416.944(b)(5)(vii)).

[ECF #6-2, pp. 21-65].

Plaintiff requested a review of the ALJ's decision. The Appeals Council denied Plaintiff's request to review the ALJ's decision, making the decision of the ALJ the final decision of the Commissioner. On May 31, 2018, Plaintiff filed a complaint seeking judicial review of the

5

Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #11; ECF #13], and the Magistrate Judge issued a Report and Recommendation on May 7, 2019, recommending that the Commissioner's decision be affirmed. [ECF #17]. The Magistrate Judge recommends affirming the Commissioner's decision because the record contains substantial evidence to support the decision that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Plaintiff filed objections on May 21, 2019. [ECF #19]. Defendant replied to these objections on June 4, 2019. [ECF # 22].

## **Standard of Review**

### I.    **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence

6

supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II.     The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## Applicable Law

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under

a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The issue in this case is whether Plaintiff's disability benefits should terminate. To determine if a claimant continues to be disabled, the Commissioner follows an eight-step evaluation process for Title II claims and a seven-step process for Title XVI claims. *See* 20 C.F.R. §§ 404.1594, 416.994. Pursuant to 20 C.F.R. §§ 404.1594 and 416.994, at step one to evaluate to the Title II claim, the Commissioner determines whether a claimant is engaging in substantial gainful activity. If a claimant is engaging in substantial gainful activity and any trial work period has been completed, the claimant will be found to be no longer disabled. The performance of substantial gainful activity is not a factor used to determine whether disability benefits continue under a Title XVI claim. Step one under a Title XVI claim evaluation is the same as step two under a Title II claim evaluation; that is whether the claimant has an impairment or combination of impairments which meets or equals the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1594(f)(2), 416.994 (b)(5)(i). If the claimant meets a Listing, then disability continues.

Under step three for a Title II claim and step two for a Title VXI claim, the Commissioner must determine whether medical improvement has occurred.[2] If medical improvement has occurred, the analysis proceeds to step four for a Title II claim and step three for a Title XVI claim. If medical improvement has not occurred, the analysis proceeds to step five for a Title II claim and step four for

---

[2] Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement of symptoms, signs, and/or laboratory findings. 20 C.F.R. §§ 404.1594(b)(1), 416.944(b)(1)(i).

a Title XVI claim. At step four for a Title II claim and step three for a Title XVI claim, the Commissioner determines whether medical improvement is related to the ability to work.[3] If it does, relate to the ability to work, the analysis proceeds to step six for a Title II claim and step five for a Title XVI claim.

At step five for the Title II claim and step four for the Title XVI claim, the Commissioner determines if one of two groups of exceptions applies to medical improvement. *See* 20 C.F.R. §§ 404.1594(d), (e); 404.994(b)(3), (4). If one of the first group of exceptions applies, the analysis continues; whereas if one of the second group of exceptions applies, the claimant's disability ends. If at this stage, neither group of exceptions applies, the claimant's disability continues.

At step six for a Title II claim and step five for a Title XVI claim, the Commissioner determines whether all the claimant's current impairments in combination are severe. If these current impairments, in combination, do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If the claimant's current impairments do limit the claimant's ability to do basic work activities, the analysis continues to step seven for a Title II claim and step six for a Title XVI claim. At this step, the Commissioner assesses the claimant's residual functional capacity, and if the claimant can perform past relevant work, the claimant's disability ends. If the claimant does not have this capacity, the analysis proceeds to the final step. At this step, the Commissioner determines whether other work exists that the claimant can perform given her residual functional capacity and considering her age, education and past work experience. If other work exists she can perform, the claimant is not disabled; otherwise, her disability continues. While the claimant bears the ultimate burden to prove

---

[3] Medical improvement relates to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities. 20 C.F.R. §§ 404.1594(b)(3), 416.944(b)(1)(iii).

disability, *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985), at the final step, the Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do.

In this case, the agency initially found Plaintiff disabled and awarded benefits for a period of time, while conducting a periodic review of her continued entitlement to benefits. 20 C.F.R. §§ 404.1594(a) and 416.944(a). In conducting this review, the agency determines whether there has been any medical improvement in the claimant's impairments, and if so, whether the medical improvement is related to her ability to work. Here, the agency determined that Plaintiff had experienced medical improvement and could return to work. Plaintiff requests this Court remand the case for a further hearing.

## Analysis

### I. Right to Counsel and the Failure to Fully and Fairly Develop the Record

Plaintiff first objects that the ALJ failed to properly explain that she could have representation at her hearing. This in turn, she argues, led to her inability to fully and fairly develop the record. Plaintiff argues that the ALJ did not properly explain to her that she could have representation at the hearing before the ALJ given the typical fee arrangement in Social Security cases. Relatedly, she argues that had she had access to counsel, she would have had the opportunity to more fully develop the record by providing additional medical records to the agency.  Under 42 U.S.C. § 406(c) the Commissioner shall notify each claimant in writing of the options for obtaining an attorney to represent him or her. The notification must advise the claimant of the availability to qualifying claimants of legal services organizations which provide services free of charge.  There is no duty, however, to insist that a claimant have counsel. *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980). However, while lack of

representation by counsel does not by itself indicate that a hearing before an ALJ was not full and fair, remand may be proper when the absence of counsel created clear prejudice or unfairness. *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980). In *Sims*, the court determined that claimant suffered clear prejudice and unfairness without counsel because the record revealed it took an extended period of time for the claimant to establish her name, age, and address, she seemed confused as to how to object to her medical evidence, and her testimony was generally incoherent. Similarly, in *Marsh*, the Fourth Circuit remanded a case with instructions to further develop the record where an unrepresented claimant who was illiterate, appeared to have a lack of understanding of the evidence necessary to establish his case, and who testified that he was not informed about hiring an attorney. 632 F.2d 296, 299-300.

Plaintiff's case is distinguishable from these previous cases finding that a claimant suffered clear prejudice and unfairness without counsel. Here, Plaintiff received several notices informing her of her right to representation. Those notices clearly indicated that if a claimant is unable to afford an attorney, there are groups that can find a lawyer for a claimant. Specifically, the notices indicate that some representatives may represent claimants for free and/or may not charge a fee unless approved. Further, Plaintiff did not appear to have any trouble or difficulty understanding the proceedings at the hearing. She testified that she was in school through the twelfth grade and worked part-time. Nothing in the record indicates she otherwise had trouble understanding the proceedings. Based on the evidence in the record, it appears that Plaintiff knowingly and intelligently waived her right to counsel at the hearing.

Furthermore, Plaintiff did not suffer clear prejudice or unfairness as a result of the fact that she was unrepresented by counsel. The duty to provide evidence of impairment belongs to the Plaintiff. *Pass v. Chater*, 65 F. 3d 1200, 1203 (4th Cir. 1995). However, the ALJ must scrupulously probe into the facts and explore all relevant facts, being especially diligent to ascertain the favorable as well as

11

unfavorable facts when presented with a *pro se* claimant. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). Plaintiff testified at the hearing that she had recently visited a doctor, however she argues that the ALJ did not consider that there was evidence outstanding and that the record was incomplete. At her hearing, Plaintiff confirmed that she had gone over the record and had given some additional medical records to be included. Plaintiff stated that she did not have any additional medical records to add at that time; however, she did testify that she had visited her cardiologist a few weeks prior and that her doctor said she was "doing good" and that she did not have an echocardiogram done at that time. Plaintiff does not otherwise argue that the medical records provide any information that would be helpful to an examiner of her case, nor does she make a showing that the ALJ committed an error in failing to offer her further assistance in seeking these records, particularly when the ALJ inquired into the substance of those visits at the hearing. As the Magistrate Judge notes, Plaintiff is now represented by counsel, and was represented by counsel when she requested review by the Appeals Council. Since that time, Plaintiff has not sought to include additional medical records into evidence which she states are outstanding. Therefore, this Court agrees with the Magistrate Judge that Plaintiff has not made a showing that she was prejudiced by the inability to introduce these records that Plaintiff has not otherwise attempted to put forth before the Court. Nonetheless, because this Court is remanding this case for the reasons stated below, this Court finds that Plaintiff may have the opportunity on remand to provide any additional missing records she claims should have been before the ALJ.

## II. Opinion Evidence

Plaintiff argues that the ALJ failed to properly consider the opinions of physician's assistant Smith and Dr. Abu-Ata. Specifically, Plaintiff argues that the ALJ focused solely on the normal ejection fraction results in the record in assigning little weight to PA Smith's opinion. Plaintiff argues this was

12

error because another physician's assistant, Tjuana Siedl, rendered a similar opinion as PA Smith, and further, that several months after Plaintiff was deemed to have medically improved, her records show another ejection fraction of 48%, which is not within normal limits. Plaintiff's claim was filed before March 27, 2017 when the regulations regarding the evaluation of medical evidence was revised. Under the regulations in effect at the time the claim was filed, a physician assistant's opinion is not subject to the treating physician rule. *See Dandridge v. Colvin*, 9:12-cv-03066, 2014 WL 4063142, at *7 (D.S.C. Aug. 12, 2014) (noting that a physician's assistant is not subject to the deference giving under the treating physician rule). Instead, medical opinions from physician's assistants would be considered as opinions from "other sources" under 20 C.F. R. 404.1513(a), (d).[4] However, an ALJ's opinion should still reflect consideration of opinions for other sources. SSR 06-03p. Further, an ALJ has an obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability. *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017).

Plaintiff argues substantial evidence does not support the ALJ's decision with respect to the explanation give "little weight" to the opinion of Smith. Specifically, Plaintiff argues that the ALJ states that later evidence showing an ejection fraction of 63%, within normal limits, is inconsistent with Smith's opinion that claimant was "unable to maintain gainful employment" and should be considered "100% disabled from her cardiac condition alone."[5] However, as previously pointed out in the ALJ's own decision, approximately one year after Plaintiff's benefits ceased due to medical improvement, an

---

[4] In January 2017, the Social Security Administration published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These rules provide that the ALJ should consider the medical opinions in the case record, and considers as an acceptable medical source a licensed physician assistant for impairments within his or her licensed scope of practice. However, these revisions became effective on March 27, 2017, after plaintiff's claim was filed.

[5] This Court notes that determinations of disability are ultimately an issue reserved to the Commissioner. *Miller v. Callahan*, 964 F. Supp. 939, 951 (D. Md. 1997).

echocardiogram showed an ejection fraction of 48%. Further, aside from that one ejection fraction result within normal limits, Plaintiff's objective testing generally show abnormal ejection fraction results. The ALJ's second reason for discounting the opinion of Smith was that subsequent treatment notes show few complaints of shortness of breath and no complaints of lower extremity edema or orthopnea. However, Plaintiff argues that the subsequent, similar opinion of another physician's assistant, Tjuana Siedl, provided in September of 2016, should bolster Smith's findings. Further, a review of the medicals records show that while Plaintiff did not complaint of shortness of breath and edema at some visits, at other visits subsequent to when she was deemed medically improved, she did in fact complain of chest pain, shortness of breath, and dizziness, among other symptoms. Finally, PA Siedl indicated functional limitations within her notes, including that Plaintiff should not be allowed to perform strenuous physical activities. Accordingly, this Court cannot say with certainty that the ALJ's reasons for discounting the opinion of PA Smith are sufficiently supported by substantial evidence, particularly when considering the fact that a later ejection fraction, a diagnostic test, provides objective evidence to support his opinion and the ALJ did not otherwise offer several reasons for discounting this opinion. Therefore, this Court will remand this case for further proceedings to allow the ALJ an opportunity to reconsider the weight afforded to PA Smith's opinion and to fully explain the weight given to this medical opinion to permit meaningful review. This Court notes that because it is remanding this case, the ALJ should also reconsider the remaining objections provided by Plaintiff, including the analysis of Dr. Abu Ata's opinion and the assessment of Plaintiff's subjective symptoms, as well.

### Conclusion

The Court has thoroughly considered the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections, and the applicable law. For

the above reasons, the Court respectfully rejects the Magistrate Judge's recommendation to affirm the

Commissioner's decision [ECF #17], and remands this case for further fact finding consistent with this

Order. The Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and

this case is remanded to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Florence, South Carolina
July 2, 2019

s/ R. Bryan Harwell
R. Bryan Harwell
Chief United States District Judge